THE UNTIED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD JORDAN, )
ROBERT McKAY, )
and )
THE MBTA POLICE )
PATROLMAN'S UNION, )
    *Plaintiffs,* )
 )
v. )    Civil Action No. 04-10327-RGS
 )
JOSEPH C. CARTER, )
Individually and as Chief of the )
MBTA Police Department, )
and )
THE )
MBTA POLICE DEPARTMENT, )
    *Defendants.* )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION OF THE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

This action arose from the defendant's improper disciplining of the plaintiff police officers based upon information obtained by the defendants on recorded telephone lines. As stated in the plaintiff's complaint:

> "8. The conversions pertain to, *inter alia*:
>   a. Requesting CORI records:
>   b. Discussing the Patrolman's displeasure with the Deputy Chief and the management of the MBTA Police Department;
>   c. Discussing the patrolman's concern of the Chief's absenteeism, reefing to the Chief as "No Show Joe";
>   d. Discussing safety issues concerning the Dudley MBTA Station."

Complaint ¶ 8.

The defendant's blanket statement in their <u>Memorandum</u> in support of their motion that the officers' claim of violation of their constitutional rights fails as a matter

1

of law cannot be substantiated based upon the information available in the pleadings. At this early stage it is unclear whether these recordings were public or private, though they are certainly a matter of public concern as to the absenteeism of the management of a large public safety force, and as to safety concerns at a MBTA station that had recently experienced a murder.

## STANDARD OF REVIEW

From the case law, the standard of review for a F. R. Civ. P. 12(c) motion to dismiss is "essentially the same standard for evaluation of a Rule 12(b)(6) motion." Petricca v. City of Gardner, 194 F.Supp.2d, 1, 4 (D.Mass.2002), (quoting Furtick, at al. v. Medford Housing Authority, et al., 963 F.Supp. 64, 67 (D.Mass.1997)). A motion for judgment on the pleading should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Pasdon v. City of Peabody, 330 F.Supp2d 22 (D.Mass 2004). "In deciding on the motion [Rule 12(c)] the court is to assume all plaintiffs' allegations are true and make all reasonable inferences in favor of the plaintiffs.", Alternative Energy, Inc v. St. Paul Fire and Marine Insurance Company, 267 F.3d 30 (1st Cir. 2001), (quoting Beddall v State Street Bank and Trust Co., 137 F.3d 12, 16 (1st Cir. 1998)).

## ARGUMENT

### A. This Court Should Not Consider Documents Outside Of The Pleadings For This Rule 12(c) Motion.

The plaintiffs disagree with the defendant's assertion that this Honorable Court should take into consideration, for the purposes of this motion, the transcripts of the taped conversations of the officers. In their complaint, the plaintiffs refer to statements recorded on the telephone lines that were subsequently generalized, cropped and used against the

plaintiffs in their disciplinary hearings. The statements in the complaint were derived from the notices of discipline. Neither the plaintiffs nor the plaintiff's counsel have copies of the transcripts nor have they had access to the recording that the defendant is attempting to use as evidence in support of his motion. For this motion under Fed. R. Civ. P. 12(c), in this instance, the Court should look only to the pleadings themselves and not to other ancillary documents.

In their Memorandum, the defendants cite Beddall v State Street Bank and Trust Co., 137 F.3d 12 (1st Cir. 1998). Interestingly, in allowing the Rule 12(c) motion, the Court reviewed, along with the pleadings, an agreement that was the basis of that action. The plaintiff in that case cited was a beneficiary of an agreement made by his employer (Eastern Airlines) and the defendant. Plaintiffs submit that in the Beddall case the plaintiffs substituted their former employer, Eastern Airlines in the action as Eastern was bankrupt and out of business and as such, were a party to the agreement in question.

There are significant differences between the Bedall case and our case at hand. In our case, the defendants are attempting to bring in transcripts apart from the pleadings, that 1) the plaintiffs have not examined or reviewed; 2) have not specifically referenced in their complaint[1]; and 3) are not an assented agreement of the parties. At this point, without having the transcripts in question, the plaintiffs are at a significant disadvantage to even defend against this motion.

---

[1] Plaintiffs will assume that the statements in the disciplinary record that the plaintiffs relied upon when crafting their complaint were derived from the transcripts the defendant is attempting to use for his motion. However, the plaintiff cannot determine as to what context these statements were used as they are not the full record. Plaintiffs cannot have used the transcripts when crafting the compliant as they were not available to them at the time and, since discovery has not been completed, are still not in the possession of the plaintiffs.

3

It has been well founded in case law that public safety concerns of the general public are matters of public concern. The plaintiff's contend that their comments about the response and staffing levels of the Dudley MBTA station are covered under the First Amendment. The Chief of Police spoke about the murder of a 15 year old girl to numerous media outlets; this intense media coverage certainly demonstrates this matter to be one of public concern. It is disingenuous now for the Chief to argue the murder, police response and staffing levels are not a matter of public concern, because he is personally offended by the comments of his employees.

### 2. Officers' Interests in Making the Statements vs. the MBTA's Interests; The Balancing Tests.

Under Pickering, a court must "balance the strength of plaintiff's and the public's First Amendment interests against the strength of the countervailing governmental interest in promoting efficient performance of the public service the government agency or entity must provide through its public officials." Mullin v. Fairhaven, 284 F.3d 31, 37 (1st Cir. 2002). A court must consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. Rankin v. McPherson, 483, U.S. 378, 388 (1987).

Evaluating the weight of the factors on both sides, and resolving factual disputes in favor of the non-moving party, the court must conclude the plaintiffs in this case had a First Amendment right to speak on the issues as they did without being disciplined for

9

such. The defendant's argument to the contrary lacks merit. As stated in Brasslett v. Cola, 761 F.2d 827, 845 "operational efficiency objections must be real and important before they can serve as a basis for discipline or discharge of a public employee." Defendant's failed to demonstrate how the comments as outlined in this brief as well as the compliant, effected the operationally efficiency of the MBTA Police Department. The defendant's argument that the comments of the plaintiffs' had the potential to disrupt the operation of the police department is unsupported by evidence.

Secondly, the defendant's also maintain that the plaintiff's statements had the potential to impair discipline in the police department, but they present no evidence of any impairment in discipline. The harm they argue is at best illusory. "A reasonable burden on expression requires a justification far stronger than mere speculation about serious harms." United States v. National Treasury Employees Union, 513 U.S. 454, 475 (1995).

### C. The Chief Is Not Immune From Suit Individually.

Defendant's argument properly relies on the two pronged test; he is immune from liability if he: 1) did not believe that his conduct violated the First Amendment and that 2) the First Amendment right was clearly established at the time. Dirrane v. Brookline Police Dept., 315 F.3d 65, 69 (1st Cir. 2002) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-19 (1982)). The previous paragraphs in this Memorandum outline the plaintiff's argument that the Officers had a clearly established First Amendment right at the time of the violation, therefore let us look to the second prong.

The plaintiffs contend that the analysis of the recordings began from an order of the Chief to his Deputy Chief to review the telephone conversations to determine who

was making the "No Show Joe" references concerning his absenteeism. Plaintiffs also contend that, this being the motivation for the dissemination and analysis, this dissemination was illegal under the Massachusetts wire tap statute; in fact, it is against the MBTA's own policy to use these recordings in this manner.[2] Complaint ¶ 11, 12.

Plaintiffs believe that it is a question of fact as to whether the Chief ordered the dissemination of the telephone recordings and if he did was this not only in violation of Massachusetts state law[3] but the First Amendment. Plaintiff would argue that as the Chief of Police of a large Police force, Chief Carter would be, or at least should be aware of the wire tap statute.

### D. The Police Association Has Not Standing To Sue.

The plaintiffs do not disagree and as stated at the scheduling conference the plaintiffs will move to amend their complaint.

### E. Plaintiffs Have Adequately Stated A Claim For Intentional Infliction of Emotional Distress.

The defendants opine in their Memorandum that "there can be no question that the actions Chief Carter allegedly took against the plaintiffs were undertaken entirely within the scope of his employment as Chief of the MBTA Police Department." Id. at 20. Plaintiffs disagree. As stated previously, the plaintiffs contend in their complaint that this dissemination of the recorded lines was illegal. Complaint ¶ 11. Certainly an illegal

---

[2] See Dillin Jr. v. Massachusetts Bay Transportation Auth., 49 Mass. App. Ct. 309. Plaintiffs commenced a class action against the MBTA seeking monetary damages for violation of the Massachusetts wire tap statue. The case was decided in favor of the defendants, the court opined "If in any particular case, the MBTA exploited the [telephone recording] system to serve an unseemly object, the individual employee could seek relief…" Id. at 319

[3] Certainly the plaintiffs are not seeking damages at this time or through this action for violation of the Massachusetts General Laws, however, plaintiffs submit that an intentional violation of the law may be viewed by this court as per se satisfaction of the second prong of the immunity test.

11

action or an action that violates the defendant's own policy would be considered an action outside of the Chief's employment.

As for the defendants argument that conduct alleged was not "extreme and outrageous", this not a basis for dismissing the claim. Again, based upon the standard of review in a light most favorable for the plaintiffs, it becomes a question of fact as to whether the illegal intentional dissemination of telephone recordings for the purpose of retaliating against officers because of their references to the boss as "No Show Joe" and then retaliating against these officers is "extreme and outrageous". If a question of fact remains, this claim must stand.

### F. Plaintiff's Rights to Due Process of Law Were Violated by the Defendants.

Plaintiffs claim that their rights of Due Process were violated stems from the fact that plaintiffs were assigned to their homes as their tour of duty for several months prior to any disciplinary hearing. This confinement effected that the plaintiffs as they were not eligible for overtime or normal pay differentials and therefore suffered damages. While it has previously been the position of the defendants that assignment to ones home is not a punishment and therefore there was no need for a hearing, the plaintiffs disagree. In effect the officers were placed under house arrest, not allowed to leave there homes during there scheduled tour of duty. Complaint, ¶ 6. Plaintiffs do not dispute that fact that they were entitled to and did receive a hearing concerning their discipline as afforded by Massachusetts Civil Service Law, however this hearing was several months after the plaintiffs suffered damages, (loss of overtime and differential), while being assigned to their homes.

## Conclusion

The plaintiff's contend that their claims arise from the retaliatory, illegal dissemination of recorded telephone lines subsequently used against the plaintiffs in violation of their rights of Free Speech.[4] The defendants argue that the speech is not protected on its face and therefore the complaint cannot survive a Rule 12(c) motion. To strengthen their position the defendants are attempting to use ancillary evidence to prove their constitutional points, consideration of this evidence is improper.

If, as the plaintiffs allege, the dissemination and analyzing of the recordings was illegal, and this action was done at the direction of the Chief, the Chief cannot subsequently escape personal liability behind the Massachusetts Workers Compensation Act. Along the same theory, a Police Chief intentionally seeking evidence illegally to punish officers for making fun of him then actually punishing these offices is extreme and outrageous, and if it is not, it most certainly is a question of fact to be deiced by a trier of fact. All claims have been adequately stated and supported in the Plaintiff complaint and as such the plaintiffs should be given the opportunity to develop their case further through discovery, the plaintiffs respectfully request that this Honorable Court deny the defendant's motion.

---

[4] All of which is referenced in the plaintiff's complaint.

                Respectfully Submitted,
                The Plaintiffs
                By their Attorneys

                _____
                Michael E. Bonenfant
                Campbell Bonenfant, LLP
                45 Riverside Ave
                Medford, Massachusetts 02155
                781-306-0800

Dated November 17, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the defendants through their counsel of record this day via facsimile and first class mail, postage prepaid, this 17th day of November 2004.

                _____
                Michael E. Bonenfant

14