UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RONALD JORDAN, ROBERT McKAY, and THE MBTA POLICE PATROLMAN'S UNION,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH C. CARTER, individually and as Chief of the MBTA Police Department, and THE MBTA POLICE DEPARTMENT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-10927-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Pursuant to Local Rule 7.1(B)(3), defendants respectfully request leave of Court to submit this reply in support of their motion for judgment on the pleadings. Plaintiffs simply fail to respond to much of defendants' argument, and the points they do make either misunderstand defendants' position or ignore the law. Plaintiffs have failed to state a claim, and the Complaint should be dismissed.

**ARGUMENT**

**A.   The Court May Consider The Transcripts Of Recorded Conversations.**

At the outset, plaintiffs' claim that they have not seen the transcripts of their recorded statements is inaccurate. The complete transcripts were admitted as exhibits in the internal disciplinary hearing involving both officers which were held on May 20,

2004, at which the officers were represented by counsel.  Declaration of Deputy Chief Dolores Ford-Murphy ¶2.

Plaintiffs' attempt to distinguish Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) and Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) misunderstands the holding in those cases.  Rule 12(c) does not limit the Court to "an assented agreement of the parties," as plaintiffs contend, or even to documents stipulated to be authentic; the Court also may consider "official public records," "documents central to plaintiff's claim," and "documents sufficiently referred to in the complaint."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  The transcripts of plaintiffs' own statements, provided to them months ago in their disciplinary hearings, plainly qualify, and may be considered on this motion.

After all, the principal concern in limiting the scope of materials that may be considered on a Rule 12(c) motion "generally is the lack of notice to the plaintiff."  Id. at 4 (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).[1]  There is no question of lack of notice here; the MBTA has relied on the transcripts throughout the internal proceedings against the plaintiffs, and offered them as evidence at plaintiffs' disciplinary hearings.  The statements recorded therein form the very basis of the plaintiffs' complaint.  To require that the defendants first produce the transcripts in discovery, as plaintiffs demand,[2] and then return to the Court to make the same arguments, would be a meaningless exercise.

---

[1] In Cortec, the Second Circuit held that the district court properly could consider a stock purchase agreement, offering memorandum, and warrant, even though "the documents . . . were neither public disclosure documents required by law to be filed with the SEC, nor documents actually filed with the SEC, nor attached as exhibits to the complaint or incorporated by reference in it," because they "were documents plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit."  949 F.2d at 48.

[2] Plaintiff's [sic] Memorandum In Opposition Of [sic] The Defendant's [sic] Motion for

### B.  The Statements In Question Raised No Matters Of Public Concern.

#### 1.  Plaintiffs Offer No Argument As To Two Categories Of Statements For Which They Claim They Were Disciplined.

The Complaint alleges that plaintiffs were disciplined for statements they made in four categories: requests for confidential criminal offender information ("CORI"); complaints about the management of the MBTA Police Department and the Deputy Chief; complaints about the Chief's alleged "absenteeism"; and complaints about "safety issues concerning the Dudley MBTA Station." Complaint ¶8. Though plaintiffs offer a response to the MBTA's argument on the latter two categories, they do not argue in opposition that the requests for CORI information or their generalized grousing about Department management are matters of public concern.[3] Accordingly this is, at most, a case of mixed motives, because plaintiffs themselves effectively concede that they were disciplined, at least in part, for legitimate reasons. As shown below, however, plaintiffs' argument on the remaining two allegations fails to demonstrate that their speech was directed to a matter of public concern.

#### 2.  Statements Concerning Alleged Absenteeism Involved No Matters Of Public Concern.

Plaintiffs urge the Court to evaluate the "public concern" issue by focusing only on the abstract topic of conversation – the alleged "absenteeism" of public officials – rather than examining the statements themselves or the context in which they were made. The law does not require the Court to evaluate "public concern" at that level of abstraction. As explained in our opening brief at pp. 7-8, courts including the First Circuit have uniformly held that the employee's motive in making the statement and the

---

Judgment on the Pleadings ("Pl. Opp.") at 3 n.1.

[3] Plaintiffs also briefly contend, for the first time, that they were disciplined for commenting on gay marriage. Pl. Opp. at 5-6. That claim does not appear in the Complaint.

context in which it is made are both directly relevant in assessing whether the statement involves a matter of public concern.4  That holding derives directly from the Supreme Court decision that established the "public concern" test, Connick v. Myers, 461 U.S. 138, 147 (1983), where the Court said that the determination depends on the "content, form, and context of a given statement, as revealed by the whole record."

The First Circuit's decision in O'Connor does not require any different analysis, as plaintiffs contend.  Pl. Opp. at 5.  O'Connor's holding that some speech may qualify as involving matters of public concern without reference to context has been narrowed by subsequent decisions in this Circuit.  See, e.g., Fabiano, 352 F.3d at 454 (citing O'Connor and warning against "broad standards" that "would sweep nearly every public act under First Amendment protection"); Mullin, 284 F.3d at 38.  In Fabiano, although the speech at issue concerned zoning – a matter admittedly of public concern "in a very broad sense" – the statements were made in the context of a private lawsuit, and the First Circuit accordingly held that the context and the plaintiff's motives were relevant to the "public concern" analysis.  352 F.3d at 454.  And in Mullin, where the speech in question was a public vote on a controversial issue, the First Circuit nevertheless cited and applied only the more nuanced version of the test, as required by Connick, including consideration of the speakers' motives.  284 F.3d at 38-39.

Plaintiffs urge the Court to disregard their motives and the private context of their speech because, as explained in our opening brief at 9-10, those factors weigh heavily against a finding that MacKay's name-calling ("No Show Joe") was directed to a

---

4 In this Circuit, see Fabiano v. Hopkins, 352 F.3d 447, 454 (1st Cir. 2003); Mullin v. Town of Fairhaven,  284 F.3d 31, 38 (1st Cir. 2002); O'Connor v. Steeves, 994 F.2d 905, 914 (1st Cir. 1993).  Similar holdings in other circuits include Kokkinis v. Ivkovich, 185 F.3d 840, 844 (7th Cir. 1999); Callaway v. Hafeman, 832 F.2d 414, 417 (7th Cir. 1987); Metzger v. DeRosa, 367 F.3d 699, 702 (7th Cir. 2004); Hasty v. City of Gladstone, 247 F.3d 723, 726 (8th Cir. 2001); Nunez v. Davis, 169 F.3d 1222, 1227 (9th Cir. 1999).

6880/49623-001 BNLIB1/7890v1

matter of public concern.  Read in context, MacKay used alleged "absenteeism" merely as a way of complaining about working conditions and expressing his disrespect for the Chief as a leader of the Department.

Plaintiffs insist that private statements are as protected as public statements, and chastise the MBTA for pointing out that the statements were not made to the press.  Pl. Opp. at 7-8.  The argument misunderstands defendants' position.  There is no question that statements made privately may, in some circumstances, involve matters of public concern.  See, e.g., Waters v. Churchill, 511 U.S. 661, 664-65, 681-82 (1994).  The question is not about the involvement of the press or public, but about the plaintiffs' motive, and here, the context of MacKay's statements plainly indicates that "the point of the plaintiff's speech was simply to further his own goal of expressing his displeasure with the Chief's policies."  Kokkinis, 185 F.3d at 844.

### 3. Statements About The Dudley MBTA Station Similarly Involved No Matters Of Public Concern.

Plaintiffs' four-sentence argument about the statements related to the Dudley MBTA Station, Pl. Opp. at 8-9, suffers from the same refusal to look beyond the most abstract and theoretical characterization of the subject matter.  Plaintiffs offer no rebuttal to the MBTA's argument (at pp. 8-9 of the defendants' opening brief) that the statements at issue all concerned MacKay's displeasure not about the safety of the station or the risks it posed to the public but of what the incident said about relations between his union and the senior management of the MBTA police department.  That purely internal concern is not of interest to the public, and accordingly not protected by the First Amendment as a matter of public concern.  See, e.g., Mullin, 284 F.3d at 39 ("clash of personal styles and . . . disagreements over the internal policies and workings of the Commission" are "matters of little concern to the public").

6880/49623-001 BNLIB1/7890v1

### C. Plaintiffs' Claims Fail The <u>Pickering</u> Balancing Test.

Plaintiffs entirely ignore the overwhelming body of case law holding that challenges to superior officers in police departments carry little weight in the <u>Pickering</u>[5] balancing test compared to the departments' interest in maintaining the authority of senior officers and maintaining trust and discipline in such paramilitary organizations. <u>See</u> cases cited in defendants' opening memorandum at 10-13. Instead, plaintiffs argue only that the concern is theoretical, and that the MBTA bears some burden of submitting evidence to prove the disruptive potential of these statements, or "evidence of . . . impairment in discipline." Pl. Opp. at 10.

That simply is not the law, as the Supreme Court has expressly held. In <u>Connick</u>, the Court began its <u>Pickering</u> analysis by acknowledging that "there is no demonstration here that the questionnaire [i.e., the speech in question] impeded Myers' ability to perform her responsibilities." 461 U.S. at 151. Nevertheless, the <u>Pickering</u> test favored the employer – there, a district attorney:

> When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Furthermore, **we do not see the necessity for an employer to allow events to unfold to the extent that disruption of the office and the destruction of working relationships is manifest before taking action**.

<u>Id</u>. at 151-52 (emphasis added). The Court thus expressly rejected the argument plaintiffs now advance.

Similarly, in <u>Cochran</u> v. <u>City</u> <u>of</u> <u>Los</u> <u>Angeles</u>, 222 F.3d 1195, 1200 (9th Cir. 2000), it was enough that the statements at issue "directly challenged [the immediate supervisor's] ability to make decisions free from personal bias or preferences, and undermined her authority"; in <u>Kokkinis</u>, the plaintiff's statements failed the <u>Pickering</u>

---

[5] <u>Pickering</u> v. <u>Bd.</u> <u>of</u> <u>Educ.</u>, 391 U.S. 563 (1968).

test because they "at least potentially endangered [officers'] working relationships" and "constituted a challenge to the Chief's authority and management style." 185 F.3d at 846; see id. at 845-46 (employer "is not required to wait until those working relationships actually disintegrate"). There is no need to await evidence on the disruptiveness of plaintiffs' speech.

### D. Chief Carter Is Immune From Suit In His Individual Capacity.

With respect to their claims of individual liability, plaintiffs again misunderstand the law. They assert a constitutional claim against Chief Carter in his individual capacity, and to prevail on that claim they must both demonstrate a violation of a constitutional right and prove that the constitutional right in question was "clearly established." Fabiano, 352 F.3d at 453; see Wilson v. Layne, 526 U.S. 603, 609 (1999). Chief Carter is immune from suit if a reasonable official in his position "could believe, . . . [even] mistakenly, that his conduct did not violate the First Amendment." Dirrane v. Brookline Police Dept., 315 F.3d 65, 69 (1st Cir. 2002). Surprisingly, then, plaintiffs' argument on the point (Pl. Opp. at 10-11) has virtually nothing to say about the First Amendment; instead they argue that they had a clearly established right under a Massachusetts statute not to have their recorded conversations used "in this manner." Pl. Opp. at 11.

The Court need not delve into the "Massachusetts wire tap statute," id., presumably a reference to Mass. Gen. L. c. 272 §99.[6] The legal issue before the Court is whether plaintiffs' constitutional rights were clearly established, not their rights under a

---

[6] That statute in any event does not prevent the MBTA Police Department from recording calls. Dillon v. MBTA, 49 Mass. App. Ct. 309, 729 N.E.2d 329 (2000) (holding that MBTA's recording of calls fell within "ordinary course of business" exemption). The claims would also be barred by the statutory defense of consent, since the plaintiffs plainly knew their conversations were recorded and spoke anyway. See Tr. II:67, II:73, II:76, II:115, II:142.

6880/49623-001 BNLIB1/7890v1

state statute.  Plaintiffs' obligation is to show that the defendant violated a constitutional prohibition so well-established that "a reasonable officer ***must*** have known that he was acting unconstitutionally" – not merely in violation of a statutory requirement.  Dirrane, 315 F.3d at 71; see also Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1285 (11th Cir. 2000) (to defeat an immunity defense, the law must be so clear as to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law" (emphasis added).  Plaintiffs do not even argue the relevant issue, and cannot prevail.

### D. Plaintiffs Have Failed To State A Claim For Intentional Infliction of Emotional Distress.

Plaintiffs offer no response to defendants' argument that their emotional distress claims against the Department and Chief Carter in his official capacity are barred by the exclusivity provision of the Massachusetts workers compensation statute.  See Green v. Wyman-Gordon Co., 422 Mass. 551, 557-59 (1996); Doe v. Purity Supreme, Inc., 422 Mass. 563, 566 (1996); Anzalone v. Mass. Bay Transit Auth., 403 Mass. 119 (1988).

As to their claims against Chief Carter individually, plaintiffs insist that he must have been acting outside the scope of his employment (and therefore outside the workers compensation bar) because listening to the recorded conversations was illegal. Pl. Opp. at 11-12.  Even if that were so – and in fact the access was entirely lawful, see, e.g., supra n. 6 – the Chief nevertheless was acting within the scope of his employment. The "scope of employment" test does not turn on the legality of the conduct, but rather involves three questions: "conduct of an agent is within the scope of employment if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer."  Burroughs v. Commonwealth, 423 Mass. 874, 877 (1996) (quoting Wang Lab., Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986)) (citations omitted).

6880/49623-001 BNLIB1/7890v1

"The scope of employment test asks the question: is this the kind of thing that in a general way employees of this kind do in employment of this kind." Id. (quoting Kansallis Fin. Ltd. v. Fern, 421 Mass. 659, 666 (1996)).  Review of conversations recorded on MBTA Police Department equipment falls comfortably within these tests, and Chief Carter plainly was acting within the scope of his employment when he directed the investigation.[7]

### E.     Defendants Did Not Violate The Plaintiffs' Rights To Due Process Of Law.

Plaintiffs' sole response concerning their due process claim is to note that their civil service hearing occurred "several months after the plaintiffs suffered damages (loss of overtime and differential)."  Pl. Opp. at 12.  They cite no authority to support their claim that this delay violated any due process right.

Nor do they respond to defendants' citation of Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996).  There the plaintiff, a town police chief, was suspended with pay but without any pre-suspension process, and later terminated.  The First Circuit squarely held that no procedural due process claim can succeed, even if predeprivation proceedings are inadequate, if the state provides an adequate post-deprivation remedy.  See id. (citing Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992) ("[I]f a state provides adequate postdeprivation remedies – either by statute or through the common-law tort remedies available in its courts – no claim of a violation of procedural due process can be brought under §1983 against the state officials whose random and unauthorized conduct caused the deprivation.")).  The Complaint fails to state a claim for violation of plaintiffs' due process rights.

---

[7] Plaintiffs in any case have failed to allege "extreme and outrageous" conduct, as explained in defendants' opening memorandum.

6880/49623-001 BNLIB1/7890v1

## CONCLUSION

For all of the foregoing reasons, defendants' motion for judgment on the pleadings should be granted.

Respectfully submitted,

MBTA POLICE DEPARTMENT
CHIEF JOSEPH C. CARTER

By their attorneys,


/s/ Mark W. Batten
Mark W. Batten
PROSKAUER ROSE LLP
One International Place, 14th Floor
Boston, MA 02110
(617) 526-9850

Dated: December 2, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record, either through the electronic filing process or by first-class mail, postage prepaid, this 2nd day of December, 2004.

/s/Mark W. Batten
Mark W. Batten
